IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| BELMONT PARTNERS, LLC, *Plaintiff,* v. CHINA YIBAI UNITED GUARANTEE INTERNATIONAL HOLDING, INC., *Defendant.* | CASE NO. 3:10-cv-00020 MEMORANDUM OPINION JUDGE NORMAN K. MOON |

This matter is before the Court upon Plaintiff's Motion for Summary Judgment (docket no. 29). For the reasons set forth below, the motion will be granted in part and denied in part.

### I. BACKGROUND

The facts as presented by Plaintiff and Movant Belmont Partners, LLC ("Belmont") are as follows.[1] Belmont, a Virginia limited liability company, and IG Finance Investment, Inc. ("IG Finance") entered into a Stock Purchase Agreement ("Agreement") (Ex. 2 to Pl.'s Mem. Supp. Mot. Summ. J.) pursuant to which IG Finance agreed to purchase and Belmont agreed to sell Belmont's 52.51 percent interest in SpectraSource, Inc., a Nevada corporation.

The Agreement provides, in pertinent part, as follows:

> 2.4 Merger.
>
> After the Closing [SpectraSource] will execute a merger and/or share exchange agreement (the "*Reverse Merger Agreement*") by and between [SpectraSource] and the shareholders of IG Finance . . . . Upon closing of the Reverse Merger, [IG Finance] will transfer shares to [Belmont] in amount equal to a five (5%) percent interest in the company post reverse merger.

---

[1] Defendant China YiBai is barred from presenting evidence on its behalf because it violated a discovery order dated October 28, 2010 (docket no. 28).

(Ex. 2 to Pl.'s Mem. Supp. Mot. Summ. J.) The sale of Belmont's interest in SpectraSource and the reverse merger were completed on or about June 27, 2009, and the post-merger company was renamed China YiBai United Guarantee International Holding, Inc. ("China YiBai"). Defendant China YiBai is the successor in interest to IG Finance. Despite Belmont's repeated demands, China YiBai did not deliver the shares representing a five percent interest in the company until November 16, 2010. Those shares amounted to 6.6 million shares.

Belmont brought suit against China YiBai for breach of contract and requested compensatory damages. Then Belmont moved for summary judgment pursuant to Federal Rule of Civil Procedure 56, asserting that there are no material facts in dispute concerning Belmont's claim that China YiBai breached the Agreement and that it is entitled as a matter of law to $5,610,000 in damages caused by the breach. (Pl.'s Mem. Supp. Mot. Summ. J. 1, 4.)

## II. APPLICABLE LAW

The court should grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In order to preclude summary judgment, the dispute about a material fact must be "'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). However, if the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250.

## III. DISCUSSION

### A. Breach of Contract

The issue in dispute is whether China YiBai's transfer of the shares on November 16, 2010 was timely pursuant to the Agreement. The Agreement states that "[u]pon closing of the Reverse Merger, [IG Finance] will transfer shares to [Belmont]." Belmont urges the Court to interpret the phrase "[u]pon closing" to mean "at closing." China YiBai contends that the Agreement did not fix a time for delivery of the shares, and that in the absence of a fixed time, "by implication a reasonable time was intended." *Black Horse Lane Assoc., L.P. v. Dow Chem. Corp.*, 228 F.3d 275, 284 (3d Cir. 2000).[2] What constitutes a reasonable time under New Jersey law "is usually an implication of fact, and not of law, derivable from the language used by the parties considered in the context of the subject matter and the attendant circumstances, in aid of the apparent intention." *Mazzeo v. Kartman*, 560 A.2d 733, 737 (N.J. Super. Ct. App. Div. 1989) (quoting *W. Caldwell v. Caldwell*, 26 N.J. 9, 28, 138 A.2d 402, 412 (1958)). But a reasonable time is only implied where "the trial judge cannot determine the parties actual intent." *Id.* Here, the phrase "[u]pon closing" was supplied by the parties to require the transfer of shares to occur at the time of closing or as soon as practical thereafter. Therefore, China YiBai was obligated under the Agreement to transfer the shares to Belmont on June 27, 2009 or as soon as practical thereafter. No reasonable jury could conclude that China YiBai's delivery of the shares on November 16, 2010, nearly a year and a half after closing, was timely under the Agreement. Because reasonable persons could not disagree that the Agreement was breached by China YiBai, I grant Belmont's motion for summary judgment with respect to the issue of breach.

---

[2] Section 6.2 of the Agreement provides that its interpretation and construction is to be governed by the laws of New Jersey. Although the parties have not fully briefed the choice of law issue, they agree that it is proper to apply New Jersey law to decide this motion, and I will proceed accordingly.

## B. Damages

The only remaining issue is the amount of damages that should be awarded to Belmont. On this question, I hold that there remains a genuine issue of material fact to be tried to a finder of fact. Belmont has provided a listing of stock quotes for China YiBai stock over the period of November 19, 2008 to November 18, 2010 to attempt to establish the difference between the market price for the shares at the time of closing of the sale on or about June 27, 2009 and the market price for the shares on November 16, 2010, when they were actually transferred to Belmont. (Ex. 4 to Pl.'s Mem. Supp. Mot. Summ. J.) But the stock quotes are inadequate to establish at this stage in the litigation the valuation of the shares of stock at a given point in time for use in calculating compensatory damages.

China YiBai correctly points out that the source of the stock quotes supplied by Belmont is not even identified, and thus they cannot be properly evaluated. Even if the Court could safely assume that the stock quotes represent trading of China YiBai shares as reported by the Pink Sheets, as Belmont claims, the stock quotes fail to settle other questions of material fact.[3] For example, the stock quotes do not list any stock price or other trading activity on or about June 27, 2009, the date in question. Without any further evidence, Belmont seeks to establish the stock price for the shares on or about June 27, 2009 by reference to a trade of one hundred shares on September 8, 2009 at $1.10 per share. Such evidence is insufficient to establish the price for the shares on June 27, 2009. A separate shortcoming of the stock quotes is that the shares have been traded at low volumes when compared to the large number of shares that must be valued. The price of the shares has also been volatile, increasing the difficulty of determining the appropriate price at which to value the shares.

---

[3] "'Pink Sheets' refers to a financial service that reports information about over the counter securities trading and issuers." *Kaplan v. First Hartford Corp.*, 603 F. Supp. 2d 195, 197 n.3 (D. Me. 2009). "The domestic companies listed on the Pink Sheets tend to be closely held, extremely small and/or thinly traded." *Id.* (quotations omitted).

For the above reasons, the amount of damages is an issue that must be determined by the fact finder. A jury trial is currently scheduled for January 18, 2011, at 9:30 a.m, lasting two days. In the alternative, the parties, if in agreement, may request that the issue of damages be determined by the Court rather than by a jury.

### IV. CONCLUSION

For the reasons stated herein, this Court will grant Belmont's Motion for Summary Judgment with respect to the issue of breach of contract, and will deny Belmont's Motion with respect to the issue of damages. An appropriate order will follow.

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

Entered this \_\_\_5th\_\_\_ day of January, 2011.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE